*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SJ, Minor.

UNPUBLISHED
February 11, 2025
11:07 AM

No. 369626
Gratiot Circuit Court
Family Division
LC No. 23-008766-NA

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, SJ, under MCL 712A.19b(3)(b)(*ii*) (parent failed to protect child from sexual abuse and there is a reasonable likelihood of future abuse) and (j) (reasonable likelihood of harm if returned to parent).[1]  For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In February 2023, eight-year-old SJ disclosed that respondent's stepfather sexually abused her multiple times since she was five years old.  At the time, SJ's father had sole physical custody of SJ, but shared legal custody with respondent.

In April 2023, the Department of Health and Human Services (DHHS) petitioned to remove SJ from respondent's care and terminate her parental rights.  At the time, SJ's father had sole legal and physical custody of SJ, but respondent was still afforded parenting time.  DHHS asserted that jurisdiction was proper under MCL 712A.2(b)(1) and (2), that grounds for termination of respondent's parental rights existed under MCL 712A.19b(3)(b)(*ii*), (b)(*iii*), and (j), and that termination of respondent's parental rights was in SJ's best interests.  The trial court authorized

---

[1] SJ's father was not a respondent in the proceedings.

the petition and suspended respondent's parenting time.  Subsequently, DHHS filed an amended petition with additional factual allegations, which the trial court authorized.

At the combined adjudication bench trial and initial disposition hearing, a Children's Protective Services (CPS) investigator testified that SJ disclosed multiple incidents of sexual abuse by respondent's stepfather over several years.  The investigator noted that CPS had contacted respondent three times between 2015 and 2022 about the danger her stepfather posed to her children, and the investigator testified that respondent agreed to comply with safety plans under which she would not leave her children alone with her stepfather.  The investigator also testified that respondent was aware that her stepfather had a conviction of criminal sexual conduct (CSC) involving his seven-year-old stepson.  However, respondent continued to live with her stepfather during this time and left SJ alone with him.  Respondent testified that she was a victim of her stepfather's sexual abuse, that she knew about her stepfather's prior CSC conviction, and was aware her stepfather was on the sex offender registry.  She also stated that she suspected her stepfather was sexually abusing SJ for well over a year, but she failed to take any action.  Respondent admitted that CPS employees warned her several times, beginning in 2015, of her duty to protect SJ and to ensure that her stepfather was never left alone with SJ.  Nevertheless, respondent admitted that she still left SJ alone with her stepfather on numerous occasions.  Respondent explained that her mental-health issues prevented her from properly caring for SJ or protecting her from harm, although she testified that her mental health had improved.  The trial court found that evidence of stepfather's no contest plea and conviction of first-degree criminal sexual conduct (CSC-I) concerning his sexual abuse of SJ established that his sexual abuse of SJ occurred for purposes of adjudication.  Based on the testimony and evidence, the trial court concluded that jurisdiction was established by a preponderance of the evidence.

At the initial disposition, the caseworker testified that SJ had extreme anxiety as a result of her sexual abuse, but she had improved significantly while in her father's care.  The caseworker noted that respondent continued to contact and financially rely on her mother, despite their hostile relationship.  The caseworker stated that respondent struggled with financial and housing instability.  The caseworker testified that respondent voluntarily engaged in services, but she was not consistent with her attendance and did not demonstrate progress in her ability to protect SJ.  Based on her observations, the caseworker opined that there was a lack of bond between SJ and respondent.  The caseworker stated that SJ expressed that she does not feel safe with her mother.  Respondent admitted that she suspected her stepfather was sexually abusing SJ for well over a year, but she failed to take any action and continued to allow her stepfather to have unsupervised contact with SJ.  Notably, when respondent was asked whether anything had changed that would lead her to take action and protect SJ from future harm, she candidly admitted that nothing had changed.  She further acknowledged that her desire to continue to have parenting time with SJ was selfish, and likely not in SJ's best interests.  The trial court concluded there was clear and convincing evidence to support termination of respondent's parental rights to SJ under MCL 712A.19b(3)(b)(*ii*) and (j), and that termination of respondent's parental rights was in SJ's best interests.  This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). We also review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). We review de novo as a question of constitutional law whether a child-protective proceeding afforded a parent fundamentally fair procedures. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.).

## III. ANALYSIS

Respondent argues that the trial court failed to make sufficient factual findings regarding the statutory bases for termination, and clearly erred by finding that termination of her parental rights was in SJ's best interests without considering other less-restrictive means in lieu of termination. We disagree.

### A. STATUTORY GROUNDS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

In this case, the DHHS sought termination with its initial petition. "In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id*. Following testimony and evidence at the adjudication bench trial, the trial court concluded that jurisdiction over SJ was established by a preponderance of the evidence here. "Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being." *Id*. A trial court is authorized to order termination of parental rights at the initial dispositional hearing, as it did in this case, on the basis of legally admissible evidence that had previously been introduced at the adjudication trial or legally admissible

evidence presented for the first time at the dispositional hearing." *In re Mota*, 334 Mich App 300, 315; 964 NW2d 881 (2020), citing MCR 3.977(E).[2] See also MCL 712A.19b(4).[3]

Termination of parental rights is appropriate under MCL 712A.19b(3)(j) when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." In concluding that there were grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j), the trial court adopted and relied on its factual findings at the adjudication stage. At the adjudication, the trial court found that respondent was a victim of her stepfather's sexual abuse when she was a minor, was aware of her stepfather's prior CSC conviction arising out of the abuse of his seven-year-old stepson, and had received warnings from CPS about her duty to protect SJ from her stepfather. The court further found that respondent had created safety plans with CPS in which she was not to leave SJ unsupervised with her stepfather, but respondent failed to follow those plans and left SJ with her stepfather unsupervised despite her knowledge of his history and her suspicions that he had been sexually abusing SJ for several years. The court also found that respondent struggled with her mental health and struggled to care for her children as a result, noting respondent's testimony that she relied on SJ to help care for her other child. The court found that respondent struggled to

---

[2] MCR 3.977(E) provides:

> **(E) Termination of Parental Rights at the Initial Disposition**. The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
>> (a) are true, and
>>
>> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);
>
>> (4) termination of parental rights is in the child's best interests.

[3] "If a petition to terminate the parental rights to a child is filed, the court may enter an order terminating parental rights . . . at the initial dispositional hearing." MCL 712A.19b(4).

maintain her home during her depressive episodes, and it found that respondent had previously struggled with financial and housing insecurity.

In addition to its factual findings made at the adjudication, the trial court articulated other factual findings at the initial disposition. The court found that respondent continued to rely on and engage with her family and it found that respondent's limited participation in services had not benefited her. The court also found that there was a history of domestic violence in respondent's family household, noting an instance in which respondent's brother pointed a shotgun at her. The court further found that respondent had not remediated her mental-health issues that caused her to make decisions resulting in SJ's abuse, and it found that the evidence did not suggest that respondent would make better decisions moving forward regarding SJ's care.

The trial court made sufficient factual findings regarding termination under MCL 712A.19b(3)(j). The totality of the evidence amply supports that there was a reasonable likelihood that SJ would be harmed if returned to respondent's care based on respondent's conduct. Accordingly, we are not left with a definite and firm conviction that the trial court clearly erred by terminating respondent's parental rights under MCL 712A.19b(3)(j). Because clear and convincing evidence supported termination under MCL 712A.19b(3)(j), we need not address whether the trial court properly found statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*). See *In re Foster*, 285 Mich App at 633.

## B. BEST INTERESTS

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5) ("If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made."). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013).

Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Because a child's placement with a relative militates against termination, "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43.

Respondent argues that the trial court violated its statutory and constitutional mandates by finding that termination of her parental rights was in SJ's best interests without first considering other less-restrictive means, such as a juvenile guardianship, in lieu of termination. Respondent did not argue in the trial court that due process required the trial court to consider and rule out less restrictive alternatives, such as a guardianship, before terminating respondent's parental rights, nor did the trial court decide whether due process required such a consideration. Therefore, her constitutional challenge is unpreserved. We review unpreserved issues for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App at 258. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (cleaned up). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (cleaned up).

Parental rights, as a constitutional matter, encompass parents "fundamental liberty interest in the care, custody, and control of their children." *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010) (cleaned up). However, a parent's right to control the care and custody of their children is not absolute; "the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *In re Sanders*, 495 Mich 394, 409-410; 852 NW2d 524 (2014) (cleaned up). Once the trial court determines that there is jurisdiction over the child, it "has broad authority in effectuating dispositional orders" that are "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained." *Id*. at 406. The state's interests in protecting the child prevail over the parent's constitutional rights when jurisdiction over the child is assumed. *Id*. at 406, 409-410. And upon the establishment of a statutory ground for termination under MCL 712A.19b(3) by clear and convincing evidence, a parent's liberty interests "no longer include[] the right to custody and control of the children." *In re Moss*, 301 Mich App at 88 (cleaned up). Even if a trial court finds that statutory grounds for termination are established by clear and convincing evidence, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez Minors*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

Respondent's argument that the trial court erred by failing to consider a guardianship for SJ is without merit. "Under appropriate conditions, a trial court may forego termination and instead place children in a guardianship." *In re Lombard*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 367714); slip op. at 6. A guardianship enables the parent and the child to maintain a relationship while placement with the parent is not possible. *Id*. The appointment of a guardian is generally done in an effort to avoid termination of parental rights. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). One of two conditions must be met for a court to consider a guardianship before termination: "either DHHS must demonstrate under MCL 712A.19a(8) that initiating the termination of parental rights to the child is clearly not in the child's best interests or the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8)." *Id*., citing MCL 712A.19a(9) (cleaned up). And the court may only appoint a guardian if it finds that it is in the child's best interests *Id*. In other words, "the appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014). It is undisputed that termination was sought with the initial petition; thus, MCL 712A.19a is inapplicable here.

Further, SJ's father had sole legal and physical custody of SJ at the time that DHHS filed its initial petition seeking termination of respondent's parental rights. Accordingly, there was absolutely no factual or legal basis to appoint a guardian for SJ. Respondent has not established plain error.

Although the trial court did not consider guardianship, it did consider allowing respondent to have parenting time with SJ in lieu of termination. But the court found that allowing parenting time was not in SJ's best interests in light of her need for safety, security, permanency, and the ability to move forward in a positive environment.

Respondent also claims that the trial court erred by failing to consider the fact that SJ was placed with her father in determining whether termination was in SJ's best interests. This argument is not supported by the record. The trial court expressly acknowledged that SJ was placed with her father and found that SJ's father had provided her with appropriate care. The trial court found that SJ benefited from the security, stability, and support her father offered. Further, the trial court found that SJ's anxiety and performance in school improved while in her father's care.

A preponderance of the evidence in the record supports that termination of respondent's parental rights was in SJ's best interests. The record reflects that SJ had anxiety about seeing or living with respondent again. The record further reflects that SJ did not ask about respondent. The trial court focused on SJ's need for support, stability, and long-term safety in determining that termination of respondent's parental rights was in SJ's best interests. We are not left with a definite and firm conviction that a mistake has been made.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel

-7-